**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
_____
                                :
HOZAY A. ROYAL,                 :
                                :        Civil Action No.
            Plaintiff,          :        11-4862 (CCC)
                                :
            v.                  :
                                :
RUTHERFORD POLICE et al.,       :
                                :
            Defendants.         :
_____:
                                :
HOZAY A. ROYAL,                 :
                                :        Civil Action No.
            Plaintiff,          :        11-7149 (CCC)
                                :
            v.                  :
                                :
EDWARD V. ROCHFORD et al.,      :
                                :
            Defendants.         :
_____:
                                :
HOZAY A. ROYAL,                 :
                                :        Civil Action No.
            Plaintiff,          :        12-1640 (CCC)
                                :
            v.                  :
                                :
ANTHONY ANNECCHIARICO,          :
                                :
            Defendant.          :
_____:
                                :
HOZAY A. ROYAL,                 :
                                :        Civil Action No.
            Petitioner,         :        12-4900 (CCC)
                                :
            v.                  :
                                :
HADDON TOWNSHIP COURT,          :        **MEMORANDUM OPINION**
                                :        **APPLIES TO ALL ACTIONS**
            Respondent.         :
_____:
```

**Cecchi**, District Judge:

These four matters, all instituted by Hozay Royal ("Royal"), come before the Court upon:

a.   Royal's filing of his response to this Court's order to show cause why in forma pauperis status should be restored/granted to him with regard to his most recent cluster of civil rights cases;

b.   Royal's motion to grant him in forma pauperis status as to these civil cases; and

c.   Royal's filing of a habeas corpus petition, executed pursuant to Section 2254, and accompanied by his filing fee of $5.00.

For the reasons detailed below, this Court's prior order (revoking and denying Royal's in forma pauperis status) will remain in force with regard to civil rights cases, and the Court's final in forma pauperis determination will be reserved. Royal's habeas petition will be dismissed, without prejudice, as facially unexhausted, and no certificate of appealability will issue.

## I.   <u>BACKGROUND</u>

The procedural history of these matters is as convoluted as the factual predicates underlying these actions.[1]

---

[1] Royal's history of federal criminal prosecutions, as well as civil actions he instituted in connection with his convictions and incarcerations, were briefly discussed in this Court's prior

Royal's current cluster of civil actions consists of three matters amenable to reopening and one closed as duplicative. Specifically:

a.  on August 24, 2011, Royal submitted a civil complaint, which gave rise to Royal v. Rutherford Police Dept. ("Rutherford"), Civil Action No. 11-4862 (CCC);

b.  on September 12, 2011, the Clerk received from Royal another civil complaint, which gave rise to Royal v. MCCF ("MCCF"), Civil Action No. 11-5248 (CCC);

c.  on December 8, 2011, Royal submitted yet another civil complaint, which gave rise to Royal v. Rochford ("Rochford"), Civil Action No. 11-7149 (CCC); and

d.  on March 14, 2012, the Clerk received from Royal one more civil complaint, which gave rise to Royal v. Annecchiarico ("Annecchiarico"), Civil Action No. 12-1640 (CCC).

_____

opinion ("January Opinion") issued on January 27, 2012 (docketed, jointly with this Court's accompanying order, in Royal v. Rutherford Police Dept., Civil Action No. 11-4862 (CCC), Royal v. MCCF, Civil Action No. 11-5248 (CCC), and Royal v. Rochford, Civil Action No. 11-7149 (CCC)). See January Opinion at 2-3; accord <<https://pcl.uscourts.gov/view?rid=3rLXUoF34joZ98epeSbE7 YiuDNcIhPr3Y94wpxnX&page=1>> (providing public records of Royal's two federal criminal prosecutions and thirty district-level and appellate-level actions instituted in this District, the United States District Court for the Eastern District of Pennsylvania and the United States Court of Appeals for the Third Circuit), and <<http://www.supremecourt.gov/Search.aspx?FileName=/docket files/11a153.htm>>, <<http://www.supremecourt.gov/Search.aspx? FileName=/docketfiles/07-1056.htm>> and <<http://www.supreme court.gov/Search.aspx?FileName=/docketfiles/11-7778.htm>> (reflecting Royal's filings with the United States Supreme Court).

In <u>Rutherford</u>, Royal alleged challenges suggesting a Fourth Amendment claim based on his assertion of illegal search and seizure and false imprisonment.  <u>See</u> January Opinion (detailing Royal's claims).  In his <u>Rochford</u> complaint, Royal alleged denial of access to the courts.  <u>See</u> <u>id.</u>  Royal's complaint in <u>MCCF</u> elaborated on his challenges already asserted in <u>Rochford</u>.  <u>See</u> <u>id.</u>  Royal's complaint in <u>Annecchiarico</u> suggested a malicious prosecution claim.  <u>See</u> <u>Royal v. Annecchiarico</u>, Civil Action No. 12-1640 (CCC), Docket Entry No. 1.

The aforesaid pleadings were followed by Royal's submission of numerous motions and amended pleadings.  <u>See</u>, <u>generally</u>, <u>Rutherford</u>, <u>MCCF</u>, <u>Rochford</u> and <u>Annecchiarico</u>, Dockets.

The Court's first review of Royal's claims resulted in an order ("November Order") and accompanying opinion ("November Opinion") dated November 17, 2011, <u>i.e.</u>, the decisions issued prior to Royal's commencement of the <u>Annecchiarico</u> action.  In those decisions, the Court:

a.  directed the Clerk to terminate <u>MCCF</u> as duplicative of <u>Rochford</u> (without assessing a fee with regard to <u>MCCF</u>);

b.  granted Royal <u>in</u> <u>forma</u> <u>pauperis</u> status for the purposes of both <u>Rutherford</u> and <u>Rochford</u>;

c.  dismissed Royal's First Amendment challenges (stated in <u>Rochford</u>) in part and granted him a narrowly-tailored leave to file an amended complaint; and

d.   upon explaining to Royal the pleading standard and

substantive legal tests, directed him to file an amended

complaint in Rutherford so to allow him an opportunity to

clarify the facts of his Fourth Amendment challenges.  See,

generally, November Order and November Opinion.

With regard to Royal's allegations stated in Rutherford, the

Court observed:

> [Royal's] allegations in [Rutherford] read as follows:
>
>> On July 20, 2010, at approximately 3:00 p.m.
>> - 3:30 p.m. in Rutherford, New Jersey, in the
>> back of Lanni's Appliance store, [Royal] was
>> preparing to receive two (2) televisions.
>> However, before [Royal] received the
>> televisions he was seized after he ran away .
>> . . . Defendants . . . seized [Royal]
>> without probable cause; seized and searched
>> his vehicle and its contents without a
>> warrant, nor probable cause. . . .
>
> The Complaint concludes with [Royal's] request for
> relief in the form of $1,000,000.00 in monetary damages
> from each Defendant . . . .
> . . .
> Here, [Royal's] Complaint paints a picture strongly
> suggesting that a reasonable officer would have
> believed that an offense had been or was being
> committed by [Royal]: at no point did [Royal] assert
> that the officers could have observed him legitimately
> purchasing the televisions at issue.  In fact, no
> statement in the Complaint suggests, even vaguely, that
> he purchased the televisions at all or that he was
> picking up his own televisions after a repair, or that
> he was legitimately employed by the store and was
> picking the televisions up in order to make a delivery
> to a customer.  Moreover, [Royal] does not assert that
> the officers could have observed any interactions
> between him and the store owners indicative of
> legitimacy of [Royal's] actions; indeed, he does not
> claim that he ever entered the store or that he was in
> front of the store, where pedestrians, the store owners

or the police could observe his legitimate actions.
Rather, [Royal] asserts that he situated himself at
"the back" of the store and was merely "preparing to
receive two (2) televisions."  He had his vehicle
nearby for the purposes of this unelaborated-upon
"receivership."  Furthermore, [Royal] states that -
when he was about to execute this mysterious
"receivership" - he saw police officers approaching
and, for the reasons unspecified in the Complaint, he
elected to abandon his "receivership" efforts and tried
to run away.  Simply put, [Royal's] Complaint paints a
picture, which - being observed by a reasonable officer
- would have led that officer to believe that [Royal]
was involved (or was about to get involved) in criminal
activity.  Therefore, the Complaint, as drafted, does
allege probable cause for [Royal's] arrest and search
of his vehicle. While the Court could fancy a scenario
where, under the circumstances pled by [Royal], a
reasonable officer observing [Royal's] activities might
still not conclude Plaintiff was involved or about to
get involved in a criminal offence, [Royal's]
challenges cannot pass the plausibility requirement set
forth in Iqbal.

[Royal] asserted that he was arrested in connection
with the incident that took place on June 20, 2010.
[The Court is aware] of a news release dated August 12,
2010, which stated:

> Rutherford police officers managed to catch a
> Philadelphia man who was allegedly using
> other people's credit cards to purchase
> electronic equipment in a sting on July 20 in
> which officers posed as employees at Lanni[]
> Appliances on Park Avenue.  The investigation
> began when employees of Lanni[] Appliances
> called police on July 16 to report that a
> customer calling himself Tom Henson had twice
> placed orders using a credit card account
> that was declined. The first order came on
> July 12 for a 46-inch Samsung television.
> After the first card was rejected, "Henson"
> gave the store a second account that was
> accepted.  A thin black male in his 50's
> picked up the television on July 14.  Two
> days later he called back to order two more
> televisions.  Once again, the first account
> he used to put down a deposit was declined so

he gave a second that was accepted.  At this
point, employees at Lanni[] became suspicious
and contacted the police that day.  On July
19, police contacted the credit card company
and found that several of the cards were
being used fraudulently.  On July 20, the man
called back to pay the rest of the order.
Once again the first card he gave the store
was denied but officers told the employees to
tell him it was approved.  Rutherford police
officers went to Lanni[] Appliances and posed
as employees and waited for the man to
arrive.  According to police, at about 7:30
p.m. a van pulled up and the same black male
exited and went into the store. When asked by
undercover police the man said he was Tom
Henson's nephew, according to police.  He was
directed to drive around the corner to
Chestnut Street where more officers were
waiting.  Detective Tom Lewis approached the
man, who was later identified as [Plaintiff].
Lewis identified himself as an officer and
ordered [Plaintiff] to surrender.  According
to police, [Plaintiff] ran for it and Lewis
and Detectives James Garner and Sean Farrell
pursued on foot.  The officers caught up with
[Plaintiff] as he attempted to scale a fence
in the alleyway between 33 and 25 Franklin
Place.  Farrell and Garner arrested
[Plaintiff] and he was taken into custody.
Police report evidence linking [Plaintiff] to
further fraud at other stores was found in
the van and the investigation is still
ongoing.  [Plaintiff] was charged with three
counts of fraudulent use of a credit card,
three counts of theft, one count of
obstruction and one count of resisting
arrest.  Bail was set at $100,000 with [no]
10 percent option and he was transferred to
the Bergen County Jail.  Police say they also
discovered that [Royal] was wanted by U. S.
Marshals.

Royal v. Rutherford Police Dep't, 2011 U.S. Dist. LEXIS 133153,

at *3-20 (D.N.J. Nov. 17, 2011) (footnote 6 incorporated in the

main text, discussion of applicable governing legal regime,

citations to docket and other footnotes omitted).[2]

Shortly after issuing its November Order and Opinion, the Court discovered records suggesting that Royal was not entitled to proceed in forma pauperis in Rutherford and Rochford, and he could not qualify for in forma pauperis status in his – by then already commenced – Annecchiarico action, because he had at least three "strikes" within the meaning of 28 U.S.C. § 1915(g).

Specifically, reviewing Royal's online records of prior litigations in federal fora, the Court located:

a.   records showing that, on June 1, 2004, Royal – while being incarcerated in the SCI Mahanoy, Pennsylvania – commenced a § 1983 action Royal v. Fahy, Civil Action No. 04-2368 (ER) (E.D. Pa.), which was dismissed by Judge Eduardo C. Robreno ("Judge Robreno") pursuant to Rule 12(b)(6);

b.   records showing that, on September 8, 2006, Royal – while being incarcerated again, this time at the FCI Fort Dix, New Jersey – commenced a Bivens action Royal v. Doe, Civil Action No. 06-4025 (ER) (E.D. Pa.), dismissed by Judge Robreno sua sponte as facially frivolous; and

c.   records showing that, on July 31, 2003, Royal – being re-incarcerated – filed an appeal as to Judge Robreno's grant of summary judgment in favor of defendants in yet another §

_____

[2] The Court found no basis for taking judicial notice of the newspaper article but directed Royal to clarify, in his amended Rutherford complaint, the circumstances of Royal's arrest.

1983 action, Royal v. Durison, Civil Action No. 03-4441 (ER)
(E.D. Pa.), and that appeal was dismissed, as facially
meritless, by the Court of Appeals in Royal v. Durison, 254
F. App'x 163 (3d Cir. 2007), cert. denied, 553 U.S. 1065
(2008); accord Royal v. Durison, U.S.C.A. Index No. 05-1036,
Docket Entry dated December 12, 2007 (Court of Appeals'
mandate finding that "Heck v. Humphrey, 512 U.S. 477 (1994),
. . . barred Royal's claim as a threshold matter").

Having detected these three records, this Court revoked
Royal's in forma pauperis status for the purposes of Rutherford
and Rochford, and denied the same for the purposes of
Annecchiarico, while issuing Royal an order to show cause as to
why in forma pauperis status should be restored to him in these
three matters.  See id. (allowing Royal, in alternative, to
prepay the filing fee in any or all of these actions).

In response, Royal submitted a multitude of amended
pleadings and a response to the order to show cause styled, for
the reasons not entirely clear to this Court, as Royal's "motion
for an order to show cause" rather than a response.  See, e.g.,
Rochford, Docket Entry No. 21.  That submission was followed by a
motion seeking in forma pauperis as to all his civil cases.  See
e.g., id., Docket Entry No. 22.

Royal's response to the order to show cause is exceedingly
lengthy, see id., Docket Entry No. 21 (a 56-page response).

Substantively, these two submissions reflect: (a) Royal's general opinion as to what the governing legal precedent is or should be; (b) Royal's belief that a grant of Rule 12(b)(6) motion cannot result in a "strike"; (c) Royal's position that Judge Robreno gave "no reason" for granting the Rule 12(b)(6) motion in Royal v. Fahy; and (d) Royal's impression that the Court of Appeals' dismissal of Royal's appeal in Royal v. Durison, 254 F. App'x 163, could not count as a "strike" because that appeal was dismissed on the grounds different from those relied upon by Judge Robreno in the underlying grant of motion for summary judgment. See id.

Royal's amended pleading submitted in Rutherford and Rochford are, too, exceedingly lengthy. See, e.g., Rochford, Docket Entry No. 18 (a 106-page submission). Unrelated to his previously raised "receivership" of televisions, access and malicious prosecution claims, these amended complaints assert a quasi-class-action claim to visual strip-searches of general prison population and allege that his rights were violated when a certain state judge revoked his prior order allowing Royal additional law library hours. See Rochford, Docket Entry No. 15.

However, Royal's third amended complaint addressed the issue of "receiverships" of televisions: it asserted that Royal purchased those televisions legitimately but, right upon placing the televisions in his vehicle, suddenly developed such an

uncontrollable urge to urinate that he decided to urinate on a
public street and, abandoning his vehicle and the televisions
inside, began walking toward a certain building, so to urinate on
that building, but – during that walk – developed such an
uncontrollable fear for his life upon seeing a person walking
toward him, that he abandoned his decision to urinate on the
building and, leaving behind his vehicle and the televisions,
began running away from that man approaching him (who turned out
to be one of the police officers that arrested Royal in
connection with his "receivership" of televisions).  See Docket
Entry No. 13.

    Shortly after submitting the aforesaid amended complaints
and his response to the Court's order to show cause, Royal made
another submission in this District.  That submission was styled
as a Section 2254 habeas petition ("Petition") and gave rise to
Royal v. Haddon Twsp. Municipal Ct. ("Haddon"), Civil Action 12-
4900 (CCC).  The Petition asserted that:

a.   Royal was incarcerated, again, on a new set of criminal
charges;[3]

b.   his prior criminal charges, based on an indictment for
fraudulent use of credit cards and theft by deception, are
still pending.

---

[3] Royal's history of numerous incarcerations in state and
federal facilities indicates many decades of a criminal record.

See id.; Docket Entry No. 1.

On the basis of these assertions, Royal maintains that his Petition should be excused from the reach of the exhaustion requirement and seeks an unspecified "habeas corpus relief." See id.

## II.  DISCUSSION

### A.  HABEAS ACTION

At the outset of its discussion of Royal's habeas challenges, the Court notes its concern with the incongruence between Royal's allegations made in Annecchiarico (where Royal asserted that the charges based on his fraudulent use of credit cards and theft by deception were dismissed, hence ripening his malicious prosecution claim) and Royal's allegations made in Haddon, where Royal asserted that the charges based on his fraudulent use of credit cards and theft by deception are still pending. However, the Court cannot rule out the possibility that Royal was charged with the same set of criminal violations a few times over, in connection with a different set of circumstances.

#### 1.  *Haddon* **Pleading Fails to Meet Rule 2 Requirement**

Unlike civil complaints, "[h]abeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994). A habeas petition is required to "specify all the grounds for relief available to the petitioner [and] state the facts supporting each ground." 28 U.S.C. § 2254 Rule

2(c).  "Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." McFarland, 512 U.S. at 856; Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989).

In his Haddon Petition, Royal omitted to specify both the grounds for relief he was seeking and the relief itself; he merely expressed his displeasure with the length of his criminal prosecution and the presiding state judge's alleged failure to rule on Royal's motions (or, alternatively, the state judge's ruling against Royal).  Such pleading is insufficient under Rule 2(c), rendering the Petition subject to dismissal.[4]

## 2.    **The Court Lacks Section 2254 Jurisdiction**

To the extent Royal's Petition seeks relief under Section 2254, the Petition must be dismissed for lack of jurisdiction. Section 2254 applies to post-conviction petitions for relief, in that it pertains to persons "in custody pursuant to a state court judgment."  28 U.S.C. §2254(a); Moore v. De Young, 515 F.2d 437, 441-42 (3d Cir. 1975); see also Martin v. Diguglielmo, 644 F. Supp.2d 612, 621 n.2 (W.D. Pa. 2008) ("Because a state pretrial detainee is not in custody pursuant to a state court judgment, he may not utilize §2254").  Since it is obvious from Royal's Haddon Petition that Royal is a pretrial detainee for the purposes of

---

[4] Such dismissal would be with leave to replead.  However, in light of the considerations detailed infra, there is no basis for issuance of leave to replead in Haddon.

the state criminal proceedings, he is not in custody pursuant to a state court judgment.

### 3.   Under Section 2241, the Petition Is Unexhausted

Federal courts also have limited jurisdiction to issue a writ of habeas corpus, pursuant to § 2241, before a judgment is entered in a state criminal proceeding.  See Moore, 515 F.2d at 441-42; see also Paladino v. King, 247 F. App'x 393, 394-95 (3d Cir. 2007) (challenges to pretrial incarceration are properly pursued in a §2241 petition).  However, just as those seeking post-conviction habeas relief, the petitioners seeking a pre-conviction relief must exhaust their state court remedies prior to filing a federal habeas petition.  See Schandelmeier v. Cunningham, 819 F.2d 52, 53 (3d Cir. 1986) ("The state court exhaustion requirement is mandated by statute under 28 U.S.C. 2254(b) and has developed through decisional law . . . as to claims brought under 28 U.S.C. § 2241") (citing Braden v. 30th Judicial Circuit of Kentucky, 410 U.S. 484, 490-91 (1973)); see also Moore, 515 F.2d at 442 ("although there is a distinction in the statutory language of §§2254 and 2241, there is no distinction insofar as the exhaustion requirement is concerned").

Where state court remedies are unexhausted, "principles of federalism and comity require district courts to abstain from enjoining [or otherwise interfering with] pending state criminal proceedings absent extraordinary circumstances."  Younger v.

Harris, 401 U.S. 37 (1981); see also Port Auth. Police Benevolent

Assoc., Inc. v. Port Auth. of N.Y. and N.J. Police Dep't., 973

F.2d 169, 173 (3d Cir. 1992).  This Younger abstention[5] applies

when: "(1) there are ongoing state proceedings that are judicial

in nature; (2) the state proceedings implicate important state

interests; and (3) the state proceedings afford an adequate

opportunity to raise the federal claims."  Lazaridis v. Wehmer,

591 F.3d 666 (3d Cir. 2010) (quoting Addiction Specialists, Inc.

v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir. 2005)); see also

Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989).

        All three Younger criteria are met in Haddon.  First,

Royal's claims concern a separate pending criminal case.  Second,

since Royal's Petition in Haddon concerns prosecution of criminal

charges against Royal, this pending criminal case clearly

implicates important State interests.  Third, the State forum

---

[5]     The doctrine of abstention . . . "espouse[s] a strong
    federal policy against federal-court interference with
    pending state judicial proceedings absent extraordinary
    circumstances." Middlesex County Ethics Committee v.
    Garden State Bar Ass'n, 457 U.S. 423, 431(1982).
    "Younger abstention," as the Court's teaching is known,
    "is premised on the notion of comity, a principle of
    deference and 'proper respect' for state governmental
    functions in our federal system." Evans v. Court of
    Common Pleas, Delaware County, Pa., 959 F.2d 1227, 1234
    (3d Cir. 1992), cert. dismissed, 506 U.S. 1089, 113 S.
    Ct. 1071, 122 L. Ed. 2d 498 (1993). Comity concerns are
    especially heightened when the ongoing state
    governmental function is a criminal proceeding. See id.

Cade v. Newman, 422 F. Supp. 2d 463, 465-66 (D.N.J. 2006).

affords Royal an adequate opportunity to raise all his federal law issues, such as his claim that certain evidence was obtained in violation of constitutional guarantees or that his right to speedy trial was violated.  See Moore, 515 F.2d at 441 (3d Cir. 1975) (extraordinary circumstances did not exist to permit adjudication of a speedy trial claim because the applicant "will have an opportunity to raise his claimed denial of the right to a speedy trial during his state trial and any subsequent appellate proceedings in the state courts"); Smith v. Pa State AG, 2011 U.S. Dist. LEXIS 142816 (M.D. Pa. Nov. 3, 2011) (denying writ under Younger where the petitioner claimed that his right to a speedy trial was been violated); Haskins v. Court of Common Pleas, 2011 U.S. Dist. LEXIS 65245 (M.D. Pa. May 19, 2011) (same); Duran v. Weeks, 2010 U.S. Dist. LEXIS 38754 (D.N.J. Apr. 16, 2010) (same, with regard to challenges fashioned as a civil complaint), aff'd, 399 F. App'x 756 (3d Cir. 2010).[6]

---

[6] Exceptions to the Younger doctrine exist where irreparable injury is "both great and immediate," Younger, 401 U.S. at 46, where the state law is "flagrantly and patently violative of express constitutional prohibitions," id. at 53, or where there is a showing of "bad faith, harassment, or . . . other unusual circumstances that would call for equitable relief."  Id. at 54. These exceptions are to be narrowly construed.  See Loftus v. Township of Lawrence Park, 764 F. Supp. 354, 357 (W.D. Pa. 1991). Thus, "only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction . . . is federal injunctive relief against state prosecutions appropriate." Perez v. Ledesma, 401 U.S. 82, 85 (1971).  In Haddon, Royal has not asserted any circumstances bringing his claims within any of the narrow exceptions to the Younger doctrine since: (a) there is no "great

Therefore, Royal's Petition in <u>Haddon</u> is subject to dismissal, without leave to amend, for failure to exhaust state remedies. Royal may reassert his habeas challenges, if any, by means of a new – timely filed – Section 2254 petition stating his federal claims when these claims become ripe after due exhaustion in all three levels of the state court.

### 4. **Certificate of Appealability**

Since Royal styled his Petition in <u>Haddon</u> as an application filed pursuant to Section 2254, the Court must now determine whether a certificate of appealability should issue. <u>See</u> Third Circuit Local Appellate Rule 22.2.

The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court

---

and immediate" danger of irreparable injury to Royal, especially given Royal's admission that he was let out, seemingly on bail, during the pendency of the criminal prosecution; (b) New Jersey penal law is not "violative of express constitutional prohibitions"; and (c) the fact that the state judge declined to rule on certain of Royal's motions or ruled against Royal, or that Royal's criminal prosecution proved lengthy, by no means suggest that Royal was subjected to "bad faith [or] harassment." Royal can raise all his constitutional challenges during his trial, and – if dissatisfied with the outcome – he may raise all these challenges on direct appeal or during his post-conviction review, if convicted. This Court is obligated to assume that the state procedures will afford the litigant an adequate remedy, <u>see</u> <u>Kelm v. Hyatt</u>, 44 F.3d 415, 420 (6th Cir. 1995) (citing <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 17 (1987)) ("[W]e must presume that the state courts are able to protect the interests of the federal plaintiff"), and Royal's self-serving bold conclusions failed to provide this Court with any information suggesting otherwise.

denies a habeas petition on procedural grounds, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  Id.

A somewhat different certificate-of-appealability analysis applies where the claims are dismissed on substantive grounds. Just as with claims dismissed on procedural grounds, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), but "[a] petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

In Haddon, Royal's Section 2254 claims are asserted without jurisdiction, and no jurists of reason could disagree with this Court's finding that Royal is not and cannot be in custody pursuant to the judgment of conviction which, at this juncture,

is a merely hypothetical proposition.  And, had the focus been
shifted to Section 2241, and the Court's § 2241 analysis been
merged with § 2254 certificate-of-appealability considerations,
reasonable jurists would not disagree with the Court's conclusion
that Royal's Petition is facially unexhausted.

### 5.   Conclusion as to Royal's Habeas Action

Correspondingly, Royal's Petition will be dismissed as
unexhausted, and no certificate of appealability will issue.

### B.   CIVIL RIGHTS ACTIONS

While Royal's habeas filing in Haddon could not implicate
the three-strike provisions of § 1915(g),[7] see, e.g., Malave v.
Hedrick, 271 F.3d 1139, 1139-40 (8th Cir. 2001) (expressly

---

[7] The Court, however, stresses that Royal does not have
carte blanch to abuse judicial process by resorting to habeas
applications, since such practices would qualify and be
sanctioned  as abuse of the writ.  "The concept of 'abuse of the
writ' is founded on the equitable nature of habeas corpus.  . . .
Where a prisoner . . . engages in . . . conduct that disentitles
him to the relief he seeks, the federal court may dismiss the
subsequent petition on the ground that the prisoner has abused
the writ."  Adderly v. Zickefoose, 2011 U.S. Dist. LEXIS 130224,
at *8 (D.N.J. Nov. 9, 2011), writ of mandamus denied, In re
Adderly, 453 F. App'x 161 (3d Cir. 2011).  The Court of Appeals
clarified the workings of the doctrine of abuse of writ as
follows: "When a prisoner files multiple petitions [seeking]
relief [in the form of a writ], the abuse of the writ doctrine as
set forth in 28 U.S.C. § 2244(a) may bar his claims: No circuit
or district judge shall be required to entertain an application
for [another writ] to inquire into the detention of a person . .
. if it appears that the [legal invalidity of the issue was
already explained to the litigant] by a judge or court of the
United States on a prior application for a writ of habeas corpus
. . . ." Furnari v. United States Parole Comm'n, 531 F.3d 241
(3d Cir. 2008) (relying on Sanders v. United States, 373 U.S. 1,
9 (1963)).

stating that the Prison Litigation Reform Act is inapplicable to habeas corpus actions); see also United States v. Feist, 346 F. App'x 127, 128 (8th Cir. 2009) (reiterating that "filing fee provisions of the PLRA are inapplicable" in habeas corpus actions), the Court must determine Royal's suitability for in forma pauperis status with regard to Royal's civil actions.   In addition, the Court - taking notice of Royal's execution of numerous amended complaints asserting qualitatively different transactions (or submitted in violation of this Court's narrowly-tailored leaves to amend), finds it warranted to highlight the limitations posed by the Federal Rules of Civil Procedure.

### 1.   **Limitations Posed by Rules 18 and 20**

As noted supra, in response to the Court's narrowly-tailored leave to amend, Royal submitted amended complaints asserting: (a) a claim based on revocation of a certain state judge's order allowing him additional library hours; (b) a quasi-class action claim alleging undue searches of a prison's general population; and (c) allegations elaborating on his Fourth Amendment claim (by alleging an uncontrollable urge to urinate followed by an uncontrollable urge to run away due to a suddenly developed fear for his life).   Such pleading violate the requirements of Rules 18 and 20.

Rule 20(a)(2) of the Federal Rules of Civil Procedure limits the joinder of defendants, and Rule 18(a) governs the joinder of

claims.  See Fed. R. Civ. P. 18(a), 20(a)(2).  Rule 20(a)(2)

provides: "Persons . . . may be joined in one action as

defendants if: (A) any right to relief is asserted against them

jointly, severally, or in the alternative with respect to or

arising out of the same transaction, occurrence, or series of

transactions or occurrences; and (B) any question of law or fact

common to all defendants will arise in the action."  Fed. R. Civ.

P. 20(a)(2)(A) and (B).  Rule 18 (a) provides : "A party

asserting a claim . . . may join, as independent or alternative

claims, as many claims as it has against an opposing party."

Fed. R. Civ. P. 18(a).  Wright & Miller's treatise on federal

civil procedure explains that, where multiple defendants are

named, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and
> becomes relevant only when there is more than one party
> on one or both sides of the action.  It is not
> concerned with joinder of claims, which is governed by
> Rule 18.  Therefore, in actions involving multiple
> defendants Rule 20 operates independently of Rule 18 .
> . .  Despite the broad language of Rule 18(a),
> plaintiff may join multiple defendants in a single
> action only if plaintiff asserts at least one claim to
> relief against each of them that arises out of the same
> transaction or occurrence and presents questions of law
> or fact common to all.

Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal

Practice & Procedure Civil 3d §1655; see Neitzke v. Williams, 490

U.S. 319, 328 (1989) (joinder of defendants is not permitted by

Rule 20 unless both commonality and same transaction requirements

are satisfied).

Thus, the plaintiff may not name more than one defendant in his original (or amended) complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact.  See Fed. R. Civ. P. 20(a)(2).  That rule applies with equal force to claims by prisoners and non-prisoners: as the United States Court of Appeals for the Seventh Circuit recently explained, a prisoner may not join in one case all defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produced but also to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.  28 U.S.C. § 1915(g) . . . A buckshot complaint that would be rejected if filed by a free person - say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions - should be rejected if filed by a prisoner.

George v. Smith, 507 F. 3d 605, 607 (7th Cir. 2007).

Therefore, in any one of his original pleadings (and in any one of his amended pleadings), Royal cannot assert challenges based on unrelated transactions unless these transactions implicate the very same defendants.  Since it is self-evident that the police officers who arrested Royal and searched his

vehicle during his "receivership" of televisions were neither the persons who crafted the schedule of prison law library hours nor the prison officers who, allegedly, conducted strip-searches of the general prison population, nor were they the prosecutors who, allegedly, instigated a malicious prosecution of Royal, and these transactions are wholly unrelated to each other, Royal cannot raise these claims in a single complaint.

## 2.   __Rule 8 Pleading Requirements__

Since this Court already twice explained the pleading requirement to Royal, another recital of the same appears superfluous.[8]  Moreover, in addition to detailing the pleading standard, the Court also provided Royal with detailed guidance as to the substantive tests governing his claims.  See id. at *16-22 (explaining, inter alia, that, in stating an access-to-the-courts claim based on deficiencies of the law library, the litigant "must demonstrate that: (1) (s)he suffered an 'actual injury' (i.e., that (s)he lost an opportunity to pursue a non-frivolous claim); and (2) (s)he has no other remedy, save the present civil

_____

[8] See Royal v. Rochford, 2012 U.S. Dist. LEXIS 10212, at *14-15 (D.N.J. Jan. 27, 2012) (noting, inter alia, that "[f]or a complete explanation of the standard of review applicable to civil pleadings, [Royal] should review the Court's opinion in Royal v. Rutherford Police Dep't, 2011 U.S. Dist. LEXIS 133153, at *4-8, which details the guidance provided by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Erickson v. Pardus, 551 U.S. 89 (2007); Haines v. Kerner, 404 U.S. 519 (1972); Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008); and Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)").

rights suit, that can possibly compensate for the lost claim.
Correspondingly, "[t]he complaint must describe the underlying
arguable claim well enough to show that it is 'more than mere
hope,' and it must describe the 'lost remedy'") (citations
omitted); see also Royal v. Rutherford Police Dep't, 2011 U.S.
Dist. LEXIS 133153, at *10-14 (D.N.J. Nov. 17, 2011) (explaining,
inter alia, that an arrest executed pursuant to a warrant is
necessarily lawful, as is a search conducted incident to any
lawful warrant-based or warrantless arrest, and thus – in order
to assert an unlawful warrantless arrest and a related unlawful
search – the litigant "needs to . . . show[] that, under the
facts and circumstances within the officer's knowledge, a
reasonable officer could not have believed that an offense had
been or was being committed by the person to be arrested" since
even the "[e]vidence that may prove insufficient to establish
guilt at trial may still be sufficient to find the arrest
occurred within the bounds of the law") (citations and brackets
omitted).

    Having the benefit of the Court's above-detailed guidance,
Royal alleged in his amended pleadings that:

a.    the state judge presiding over one of Royal's criminal

      prosecutions initially issued but then revoked an order

      allowing Royal extra law library time, and Royal believes

      that – due to such revocation – Royal "lost" his opportunity

to mount a speedy trial challenge to his still-ongoing prosecution.  Royal also asserted that his access rights were unconstitutionally obstructed because the library was opened three days a week and did not contain Shepards citation services.  See <u>Rochford</u>, Docket Entry No. 15; and

2.  Royal believes that his allegedly uncontrollable urge to urinate followed by his allegedly uncontrollable urge to run away in fear for his life rendered his arrest and search of his vehicle unlawful.  See <u>Rochford</u>, Docket Entry No. 13.

Royal's amended complaints failed to comply with the Court's leave to replead and with the pleading requirement already twice explained to him by the Court.

Royal's re-pleading of his access claim neither asserted an actual injury nor showed lack of other remedies: his habeas challenges in <u>Hadden</u> indicate that Royal was not even convicted on the criminal charges he claims were prosecuted in violation of his right to speedy trial.  In other words, he did not lose any opportunity to raise his denial-of-speedy-trial claim either with his trial court or by means of direct appellate, or collateral review.  Thus, his access claim appears wholly without merit.[9]

_____

[9] As to Royal's desire to challenge the state judge's initially granted but then revoked order for additional law library time, that challenge falls outside constitutional protections: access-to-the-courts protections attach only to litigants' efforts to attack their convictions or conditions of confinements falling below the levels mandated by the Eighth or Fourteenth Amendment (depending on the litigants' confinement

Analogously, Royal's repleading on his Fourth Amendment claims failed to state a claim.  The Court already explained to Royal that, to state a Fourth Amendment challenge, a litigant needs to show that, under the facts and circumstances *within the officer's knowledge*, a reasonable officer could not have believed that an offense had been or was being committed by the person to be arrested, since evidence that may prove insufficient to establish guilt at trial may still be sufficient to find the arrest occurred within the bounds of the law.  Here, in response to this Court's clear guidance, Royal submitted an amended pleading asserting an uncontrollable urge to urinate followed by an analogously uncontrollable surge of fear, which prompted Royal to abandon his vehicle and the televisions he "received," and to start running away from his vehicle, the televisions and policemen approaching him.  Since no police officer observing Royal's behavior could have known that Royal suddenly developed an uncontrollable urge to urinate on a public street, followed by an uncontrollable urge to run away in fear, and a reasonable

status).  See Bounds, 430 U.S. at 824.  A revocation of an order allowing extra law library hours cannot be "converted" into a challenge to conviction even if the litigant asserts that (s)he needed such extra hours to challenge that conviction.  See Monroe, 536 F.3d at 205 (a "mere hope" allegation fails to state a claim).  Moreover, one's conditions of confinement cannot be violated, within the meaning of either the Eighth or Fourteenth Amendment, by a limitation on the hours a confined individual can spend in a law library, since a prisoner's inability to spend extra hours) in a law library does not subject that prisoner to unconstitutional conditions of confinement.

police officer could only observe Royal's "receivership" of the
televisions followed by his abandonment of his vehicles and the
televisions, and running away upon sight of an officer
approaching him, the allegations stated in Royal's amended
pleading failed to provide the Court with any facts relevant to
Royal's Fourth Amended claim.  As this Court already observed,
"[Royal's] Complaint paints a picture strongly suggesting that a
reasonable officer would have believed that an offense had been
or was being committed by [Royal]."  Royal v. Rutherford Police
Dep't, 2011 U.S. Dist. LEXIS 133153, at *14.  Thus, his Fourth
Amendment claim appears wholly without merit.

### 3.    *In Forma Pauperis* Aspect

While, in the event Royal's Rutherford, Rochford and
Annecchiarico actions proceed to litigation, this Court might
reach the merits of his challenges, a determination of merits of
these claims is premature at this juncture since Royal's
suitability for in forma pauperis status is questionable at
best.[10]

---

[10]  The Court notes, with concern, Royal's statement that he
"does not recollect" Judge Robreno's sua sponte dismissal of
Royal's complaint in Royal v. Doe, Civil Action No. 06-4025 (ER)
(E.D. Pa.), even though such dismissal is the first "strike"
within the meaning of the three-strikes rule.  Rochford, Docket
Entry No. 23, at 5 and n. 7.  Dismissing Royal's challenges in
Royal v. Doe, Judge Robreno stated:

[Royal], a prisoner at FDC-Philadelphia, has filed a
pro se 42 U.S.C. § 1983 civil rights action against
three "John Doe" employees of the Pennsylvania Board of

Royal asserts that Judge Robreno's grant of a Rule 12 motion in <u>Royal v. Fahy</u>, Civil Action No. 04-2368 (ER) (E.D. Pa.), cannot count as a "strike." In support of this assertion, Royal states his belief that Rule 12 should have no relevance to the three-strikes rule and, in addition, claims that Judge Robreno "gave no reason" for granting defendants' Rule 12 motion in <u>Royal v. Fahy</u>. <u>See Rochford</u>, Docket Entry No. 23, at 5. Royal's position is false both legally and factually.

While Royal maintains that a grant of "[d]efendant's motion to dismiss" cannot "count as [a strike since such grant does not

---

Probation and Parole. He alleges that the defendants incorrectly calculated his court ordered term of parole supervision resulting from his two criminal convictions in 1984. Due to the alleged miscalculation, [Royal] was still on parole in 1999 when he was convicted of another criminal offense, causing him to be sentenced to a term of 1 1/2 - 3 years for violation of parole. [Royal] believes that his parole term expired in 1997, and that the defendants exceeded their legal authority and violated his civil rights by miscalculating his parole term. He seeks monetary relief. . . . [Royal's] complaint is dismissed as legally frivolous pursuant to 28 U.S.C. § 1915A . . . .

<u>Royal v. Doe</u>, Civil Action No. 06-4025 (ER) (E.D. Pa.), Docket Entry No. 4, at 1 (capitalization removed). Just two weeks after Judge Robreno's issuance of the aforesaid decision, Royal filed a motion for reconsideration, <u>see id.</u>, Docket Entry No. 6, and followed the same with another motion for reconsideration, <u>see id.</u>, Docket Entry No. 8, and then with yet another motion for reconsideration, <u>see id.</u>, Docket Entry No. 9, all of which were denied by Judge Robreno. <u>See id.</u>, Docket Entry No. 10. Granted such extensive litigation, Royal's statement that he "does not recollect this case" is puzzling.

establish that the pleading is] 'frivolous,' 'malicious[]' or 'fail[s] to state a claim,'" id., the standard of review under Rule 12(b)(6) and that employed for the purposes of Rule 8(a) sua sponte dismissal are identical. See Phillips v. County of Allegheny, 515 F. 3d 224, 233 (3d Cir. 2008) ("under our reading, the notice pleading standard of Rule 8(a)(2) remains intact, and courts may generally state and apply the Rule 12(b)(6) standard"); Briscoe v. Klaus, 538 F.3d 252, 263 (3d Cir. 2008) ("[I]n determining whether a plaintiff's claim is meritorious, we use the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim.").

Since the record of the United States District Court for the Eastern District of Pennsylvania unambiguously shows Judge Robreno's entry of an order granting a Rule 12 motion in Royal v. Fahy, that entry is the second "strike" against Royal within the meaning of the three-strikes rule.[11]

------

[11] Judge Robreno clarified that he granted the Rule 12 motion in Royal v. Fahy on merits, with a notation that the motion was unopposed, see Royal v. Fahy, Civil Action No. 04-2368 (ER) (E.D. Pa.), Docket Entry No. 41; accord Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991) (unopposed motions to dismiss can be granted only on merits, such motions cannot be granted merely because they are uncontested by the nonmoving party), and - in addition to the granting of a motion on substantive merit - observed:

It has been reported by the Bureau of Prisons that on May 18, 2007, [Royal] escaped from his confinement . . . . . The power of a court to dismiss [cases commenced by escapees] is known generally as the "fugitive disentitlement doctrine." See In re Assets of Martin,

Finally, the Court turns to the Court of Appeals' proceeding in <u>Royal v. Durison</u>, USCA Index No. 05-1036.  Royal maintains that dismissal of his appeal in that action could not be a basis for a "strike" because: (a) the underlying decision, issued by Judge Robreno, was a grant of defendants' motion for summary judgment; and (b) the Court of Appeals affirmed Judge Robreno final dismissal of <u>Royal v. Durison</u> on alternative grounds.[12] See <u>Rochford</u>, Docket Entry No. 23, at 5.

However, Judge Robreno's grant of summary judgment (or the basis for Judge Robreno's grant of summary judgment) in <u>Royal v. Durison</u> is of no relevance to the "strike" analysis related to Royal's appellate action in <u>Royal v. Durison</u>, USCA Index No. 05-1036, since – as this Court already explained to Royal – "district-level and appellate-level dismissals count as two

------

1 F.3d 1351, 1356 (3d Cir. 1993).  The Third Circuit has recently reiterated the Supreme Court's holding that "dismissal [is] an appropriate sanction when a prisoner is a fugitive during the ongoing appellate process," <u>United States v. Ladner</u>, 226 F. App'x 250 (3d Cir., June 8, 2007) (citing <u>Ortega-Rodriguez v. United States</u>, 507 U.S. 234, 242 (1993)) . . . .

<u>Royal v. Fahy</u>, Civil Action No. 04-2368 (ER) (E.D. Pa.), Docket Entry No. 41, n. 1.

[12] Royal's "strike" in <u>Royal v. Durison</u>, USCA Index No. 05-1036, ripened when the Supreme Court denied him certiorari.  <u>See</u>, e.g., <u>Smith v. V.A.</u>, 636 F.3d 1306, 1310-11 (10th Cir. 2011) ("[A] strike ripens to be counted from the date of the Supreme Court's denial or dismissal of a petition for writ of certiorari, if the prisoner filed one, or from the date when the time to file a petition for writ of certiorari expired, if he did not").

separate [actions for the purposes of counting] strikes within the meaning of the 'three-strikes rule.'" Royal v. Rutherford Police, 2012 U.S. Dist. LEXIS 60384, at *8, n. 5 (citing Hains v. Washington, 131 F.3d 1248, 1250 (7th Cir. 1997), for the clarification that "[a] complaint that is dismissed under § 1915A for failure to state a claim[] followed by a frivolous appeal leads to two 'strikes' under 28 U.S.C. § 1915(g)," and Adepegba v. Hammons, 103 F.3d 383, 388 (5th Cir. 1996) (same)).

The online records of Royal v. Durison, USCA Index No. 05-1036 (being a limited record due to the fact that this action was litigated at the time when the federal judicial system only began its transition from hard-copy filings to its current electronic filing system), indicate that the Court of Appeals reached the following conclusions:

> We are permitted to affirm the District Court on any grounds with factual support in the record, Nicini v. Morra, 212 F.3d 798, 805 (3d Cir. 2000) (en banc) . . . . Royal's first claim is that his Eighth Amendment rights were violated when he "was incarcerated for more than six months in excess of the maximum sentence allowed under Pennsylvania law[.]"  Even if true, this claim is not cognizable under Heck. . . .  Royal's second claim is that his due process rights were violated when defendants failed to properly investigate his allegation that his time served had been improperly calculated. . . .  Royal alleges that this claim is not barred by Heck. . . .  This argument is unavailing. . . .  Finally, Royal argues that Heck should not apply in this case because he cannot, at this point, file a habeas petition to challenge any aspect of his incarceration. . . .  Since Royal has therefore not established the favorable termination requirement, his § 1983 claim cannot go forward. . . .

Royal v. Durison, 254 F. App'x 163, 164-66 (3d Cir. 2007); accord

Royal v. Durison, USCA Index No. 05-1036, Docket Entry dated

December 12, 2007 (Court of Appeals' mandate finding that "Heck

v. Humphrey, 512 U.S. 477 (1994), . . . barred Royal's claim as a

threshold matter").

    Therefore, Royal v. Durison, U.S.C.A. Index No. 05-1036,

appears to qualify as the third "strike" against Royal.[13]

    However, taking notice of the Court of Appeals' appointment

of counsel to Royal for the purposes of addressing the Heck

issue, see Royal v. Durison, Civil Action No. 03-4441 (ER) (E.D.

Pa.), Docket Entry No. 35, this Court - out of abundance of

caution - will reserve its determination as to whether Royal v.

Durison, U.S.C.A. Index No. 05-1036, qualifies as the third

"strike" against Royal, and will direct the Clerk to obtain hard-

copy records of all Royal's prior federal proceedings at district

and appellate levels (since the bulk of these actions took place

prior to the federal courts' transition from hard-copy filing to

---

[13] Royal, having lost in Royal v. Durison, USCA Index No. 05-
1036, filed a petition for certiorari with the Supreme Court.
See Royal v. Durison, USCA Index No. 05-1036, docket entry dated
February 19, 2008. Having certiorari denied to him, Royal filed
a motion with the Court of Appeals requesting it to recall its
mandate. See id., docket entry dated April 5, 2011. The Court
of Appeals having denied his motion, see id., docket entry dated
May 2, 2011, Royal filed another application for certiorari with
the Supreme Court, see id., docket entry dated August 8, 2011,
which application - following two generous extensions of time
given to Royal - was denied by the Supreme Court. See id.,
docket entries dated August 8, 2011, August 19, 2011, and January
23, 2012.

electronic filing), including <u>Royal v. Durison</u>, USCA Index No. 05-1036, in order to determine: (a) whether that appellate action qualifies as a "strike"; and (b) whether any other prior court actions instituted by Royal qualified as a "strike."[14]

4.   **Conclusion as to Royal's Civil Rights Challenges**

For the foregoing reasons, Royal's <u>in</u> <u>forma</u> <u>pauperis</u> status will remain revoked, and the Court's final determination as to that matter will be reserved.  The Court will direct the Clerk to obtain hard-copy records of all Royal's federal proceedings at district and appellate levels.

An appropriate Order accompanies this Opinion.

**Claire C. Cecchi**
United States District Judge

Dated:  January 24, 2013

---

[14] Royal, however, can prosecute his civil actions upon prepayment of filing fees at any time.